KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Brendan M. Scott
Christopher Reilly

*Proposed counsel for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
| | |
|---|---|
| In re | : Chapter 11 |
| | : |
| AMMA421, LLC | : Case No. 21-11333 (DSJ) |
| | : |
| Debtor. | : |

------------------------------------------------------------x

# DECLARATION OF PAULETTE COLE PURSUANT TO
# LOCAL BANKRUPTCY RULE 1007-2

Paulette Cole, declares as follows pursuant to 28 U.S.C. § 1746:

1. I am the managing member of Amma421, LLC ("Debtor" or "Company"). In accordance with Local Bankruptcy Rule ("L.B.R.") 1007-2 of the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"), I submit this declaration ("Declaration") in connection with the above-captioned Chapter 11 case (the "Chapter 11 Case").

2. I am familiar with the business and financial condition of the Debtor. In making any and all financial representations in this Declaration, I am relying on my own personal knowledge, the Debtor's books and records and information provided by the Debtor's sublessees. Unless otherwise indicated, all financial information contained herein is presented on an unaudited basis.

3. If I were called to testify, I would testify competently to the facts set forth in this Declaration and I am authorized to submit this Declaration on behalf of the Debtor.

**I.  Required Contents of Declaration**

A.  Nature of Debtor's Business.

4. As discussed in more detail below, the Debtor holds a leasehold interest in two real properties located at (a) 880, 882, 884, 888 Broadway, New York, New York (the "Broadway Building") and (b) 33-35 East 18th Street, New York, New York a/k/a 32-38 East 19th Street ("East 19th Street Building"). The Debtor sub-subleases its leasehold interest in the Broadway Building and East 19th Street Building to three different third parties.

5. The Debtor has no operations or business other than its business relating to the leasing and subleasing of the spaces in the Broadway Building and the East 19th Street Building.

6. The Debtor has no employees and no officers or directors other than me in my role as Managing Member.

  **i.  The Broadway Building Lease.**

7. Pursuant to that certain Indenture of Lease, dated December 12, 2017 (the "Broadway Lease"), between 880 Broadway Owner, LLC ("880 Broadway Owner"), as Landlord and the Debtor, as Tenant, 880 Broadway Owner leased to the Debtor the entire second floor ("Upper Unit") of the Broadway Building.

  **ii.  The East 19th Street Building Lease.**

8. Pursuant to that certain Indenture of Lease (the "Lease"), dated as of March 15, 1993, whereby 33 Realty Associates leased to ABC Carpet Co., Inc. ("ABC") the East 19th Street Building.

9. Pursuant to that certain Assignment and Assumption Agreement dated December

2

13, 1993, ABC assigned the tenant's right, title, and interest in the Lease (the "Leasehold Interest") to Trevor Hill Corp. ("THC").

10. Pursuant to that certain Assignment and Assumption Agreement dated April 1, 2004, THC assigned the Leasehold Interest to Trevor Hill Associates LLC ("Trevor").

11. 880 Broadway Tenant, LLC ("880 Broadway Tenant") and Trevor entered into that certain Agreement for Assignment and Assumption of Leasehold Interest dated as of August 22, 2017 (the "August 2017 Assignment Agreement").

12. Pursuant to the August 2017 Assignment Agreement, Trevor assigned the Leasehold Interest to 880 Broadway Tenant.

13. On December 12, 2017, 880 Broadway Tenant, as Sublandlord and Debtor, as Subtenant entered into a Sublease (the "19th Street Sublease") for portions of the sub-basement and entire lower level, ground floor, mezzanine and third, eight, ninth and tenth floors of the East 19th Street Building ("East 19th Street Sublease Premises").

    iii.    **The Debtor's Subleases and Sub-Subleases**.

14. On December 12, 2017, the Debtor, as Sub-Sublandlord, and A.B.C. Home Furnishings, Inc. ("ABC Home Furnishings") as Sub-Subtenant entered into a Sub-Sublease ("ABC Home Furnishings Sub-Sublease") for the mezzanine, eight floor, ninth floor and tenth floor of the 19th Street Building ("ABC Home Furnishings Sub-Sublease Premises").

15. As of January 1, 2018, the Debtor and ABC Home Furnishings entered into a certain First Amendment to Sub-Sublease whereby the ABC Home Furnishings Sub-Sublease was amended to change, among other things, the Expiration Date in Section 1.9 thereof, from December 31, 2019 to December 31, 2020.

16. As of November 6, 2020, the Debtor and ABC Home Furnishings entered into a

3

certain Second Amendment to Sub-Sublease whereby the ABC Home Furnishings Sub-Sublease was amended to change, among other things, the Expiration Date in Section 1.9 thereof, from December 31, 2020 to December 31, 2021.

17.   On December 12, 2017, the Debtor, as Sub-Sublandlord and A.B.C. Carpet Co., Inc. ("ABC Carpet Co.") entered into a Sub-Sublease ("ABC Carpet Co. 19th Street Building Sub-Sublease") for the third floor of the 19th Street Building ("ABC Carpet Co. Sub-Sublease Premises").

18.   As of January 1, 2018, the Debtor and ABC Carpet Co. entered into a certain First Amendment to Sub-Sublease whereby the ABC Carpet Co. 19th Street Building Sub-Sublease was amended to change, among other things, the Expiration Date in Section 1.9 thereof, from December 31, 2019 to December 31, 2020.

19.   As of November 6, 2020, the Debtor and ABC Carpet Co. entered into a certain Second Amendment to Sub-Sublease whereby the ABC Carpet Co. 19th Street Building Sub-Sublease was amended to change, among other things, the Expiration Date in Section 1.9 thereof, from December 31, 2020 to December 31, 2021.

20.   On December 12, 2017, the Debtor, as Sublandlord and ABC Carpet Co., as Subtenant entered into a certain Sublease ("ABC Carpet Co. Broadway Sublease") for the Upper Unit located in the 880 Building.

21.   As of January 1, 2018, the Debtor and ABC Carpet Co., entered into a certain First Amendment to the Sublease whereby the ABC Carpet Co. Broadway Building Sublease was amended to change, among other things, the Expiration Date in Section 1.8 thereof, from December 31, 2019 to December 31, 2020.

22.   As of November 6, 2020, the Debtor and ABC Carpet Co. entered into a certain

4

Second Amendment to Sub-Sublease whereby the ABC Carpet Co. Broadway Sub-Sublease was amended to change, among other things, the Expiration Date in Section 1.8 thereof, from December 31, 2020 to December 31, 2021.

23. On December 17, 2017, the Debtor, as Sub-Sublandlord and pachamama21, LLC ("pachamama21"), as Sub-Subtenant entered into a Sub-Sublease ("pachamama21 Sub-Sublease") for the basement and ground floor of the East 19th Street Building ("pachamama Sub-Sublease Premises").

24. As of January 1, 2018, the Debtor and pachamama21 entered into that certain First Amendment to Sub-Sublease whereby the pachamama21 Sub-Sublease was amended to change, among other things, the Expiration Date in Section 1.9 thereof, from February 15, 2020 to February 28, 2023.

    **iv.**     **Disputes with Landlords.**

25. The Debtor's Landlords are related entities who, upon information and belief, share common ownership.

26. The Leases contain various provisions that require the Landlords to complete certain construction work at the Broadway Building and the East 19th Street Building.

27. During the period while the required construction work was not completed, which period is defined in the Leases as the Initial Period, the Debtor was not required to pay Fixed Rent. Instead, the Debtor was required to pay a reduced monthly Initial Period Payment. The aggregate monthly Initial Period Payment was $127,416.

28. The Leases provide that upon the occurrence of the Landlord's Work Completion Date and Sublandlord's Work Competition Date (collectively, the "Work Completion Dates"), in accordance with the terms of the Leases, the Basic Period would commence. During the Basic

Period, the Debtor is required to pay aggregate monthly rent in the amount of $391,667.

29. A dispute has arisen between the Landlords and the Debtor regarding the occurrence of the Work Completion Dates. The Landlord alleges that the Work Completion Dates occurred on no later than October 31, 2020, and that monthly Fixed Rent in the aggregate amount of $391,667 was owed as of that date in accordance with the terms of the Leases. The Debtor believes the Work Completion Dates could not have occurred prior to March 1, 2021, and that Fixed Rent was not owed until that date. Instead, monthly Initial Period Payments in the amount of $127,416 were owed during the period from October 31, 2020 through February 28, 2021 in accordance with the terms of the Leases.

30. In all, the Landlords allege that the Debtor owes Fixed Rent for the period from November 1, 2020 through February 28, 2021 in the aggregate amount of at least $1,566,668. However, the Debtor believes that no fixed rent is owed for the same period, and instead the aggregate amount of Initial Period Payments owed is $509,664.

31. A dispute has also arisen between the Landlords and the Debtor regarding credits that the Debtor believes are owed against Fixed Rent on account of the Landlords maintaining scaffolding adjacent to the Building beyond the Permitted Scaffolding Period (as defined in the Leases). The scaffolding was initially installed on October 1, 2018, on both Broadway and 19th Street. The scaffolding located on Broadway was not removed until August 17, 2020, and the scaffolding erected on 19th Street was not removed until February 9, 2021. Consequently, the Debtor is entitled to a credit against the Fixed Rent payable under the Broadway Lease in the amount of $1,055,340.45 (i.e., 90 days at $657.53 per day ($59,177.70 total); 90 days at $1315.07 per day ($118,356.30 total); 90 days at $2630.12 per day ($236,710.80 total); and 195 days at $3287.67 per day ($641,095.65 total)). The Landlords have disputed the Debtor's entitlement to

6

these credits.

32. In addition to the foregoing, the Landlords have alleged that the Debtor owes unpaid miscellaneous condominium charges and fuel oil charges in accordance with the terms of the Leases.

33. Based in part on the fact that the Debtor's subtenants have paid partial rent in the amount of $533,332 for the period from April 2021 through July 2021, the Debtor believes no more than $3,366,064 is owed through the Petition Date, which amount is subject to the setoffs described above.

B. Organizational and Capital Structure.

34. The Debtor is a New York limited liability company. I am a member and also the manager.

35. The Debtor has no open loan balances, lines of credit of other financing facilities.

36. Historically, the Debtor's obligations to its landlords have been paid directly by the Debtor's sublessors to the Debtor's landlords, and the Debtor has not booked revenue or expenses and has not filed tax returns.

37. However, during the pendency of this case, the Debtor will collect sub-rent owed to it and deposit all such sums into its debtor in possession bank account. The Debtor will pay post-petition rent directly to the Landlords from its debtor in possession bank account.

C. Need for Filing.

38. In addition to the disputes with the Landlords discussed above, the Covid-19 pandemic has also caused the need for the Debtor's filing. The operations of the Debtor's sublessors and sub-sublessors have been severely impacted by the Covid-19 pandemic and the resulting limited operations at their respective retail locations. As a result, the Debtor's sublessors

7

and sub-sublessors have been unable to pay the obligations owed to the Debtor, which in turn has left the Debtor unable to pay the obligations owed to its Landlords.

39. Despite the disputes with the Debtor's landlord and despite months' long settlement negotiations, on June 15, 2021, the Landlord sent a Notice of Default relating to the Broadway Building and a Notice of Default relating to the 19th Street Building.

40. On July 14, 2021, the Landlord sent a defective Notice of Termination of Broadway Lease and a defective Notice of Termination of the 19th Street Lease (collectively the "Notices of Termination"), both of which would purportedly effectuate termination of the Leases as of July 22, 2021.

41. On July 21, 2021, the Landlords commenced a civil action against the Debtor by filing a summons and complaint in the action captioned as 880 Broadway Tenant, LLC and 880 Broadway Owner, LLC vs. Amma421, LLC, Supreme Court for the State of New York, New York County, Index No.: 654529/2021

42. On July 21, 2021, notwithstanding the defects in the Landlords' Notices of Termination, the Debtor commenced this case to preserve the significant value that the Leases provide to the Debtor and its creditors.

43. The Debtor intends to use the protections and resources of Chapter 11 to maximize the value of its assets. The Debtor will consider whether to assume the leases and will also consider whether to attempt to assign the leases to a third party.

44. In time, it is the Debtor's intention to either cure legitimate defaults under the Leases and assume same, or alternatively, to assume and assign the leases to a third party in exchange for consideration that can be used to fund a plan.

D. Debtor's Case Not Originally Commenced Under Chapter 7

45. The Chapter 11 Case was not originally commenced under chapter 7 of the Bankruptcy Code. Accordingly, L.B.R. 1007-2(a)(2) is not applicable.

E. Pre-petition Creditors' Committee

46. In accordance with L.B.R. 1007-2(a)(3), to the best of the Debtor's knowledge, no pre-petition creditors' committee has been formed.

F. Holders of the Twenty Largest Unsecured Claims

47. In accordance with L.B.R. 1007-2(a)(4), a list setting forth the Debtor's twenty (20) largest unsecured creditors excluding those persons who constitute "insiders" under Bankruptcy Code section 101(31) of the Debtor is attached hereto as **Exhibit 1**. As required by L.B.R. 1007-2(a)(4), Exhibit 1 includes the creditors' names, addresses, telephone numbers (for persons familiar with the account, if available), amount of each claim, and an indication of whether the claims are contingent, unliquidated, or disputed.

G. Holders of Five Largest Secured Claims

48. In accordance with L.B.R. 1007-2(a)(5), the Debtor does not have any secured creditors.

H. Summary of Assets and Liabilities

49. As required by L.B.R. 1007-2(a)(6), a summary of the Debtor's assets and liabilities is attached as **Exhibit 2**.

I. Debtor's Securities.

50. The Debtor does not have any stock that is publicly held. The holders of the Debtor's equity interests are as follows: Paulette Cole, Trevor East 19, LLC, the Paulette Weinrib Cole 2008 Irrevocable Trust, and The Lena Cole 2008 Irrevocable Trust.

J.  Property in Possession or Custody of Custodian

51. In accordance with L.B.R. 1007-2(a)(8), the Debtor has no property in possession or custody of any custodian, public officer, mortgagee, pledgee, assignee of rents or secured creditor, or agent for any such entity.

K.  Premises Where the Debtor Conducts Business

52. In accordance with L.B.R. 1007-2(a)(9), the Debtor's principal office is located at 888 Broadway, New York, NY 10003.

L.  Location of Debtor's Assets and Books and Records

53. Pursuant to L.B.R. 1007-2(a)(10), the majority of the Debtor's books and records are located at the Debtor's office at 888 Broadway, New York, NY 10003.

M.  Threatened or Pending Actions Against the Debtor

54. Pursuant to L.B.R. 1007-2(a)(11), a list of pending or threatened actions is annexed hereto as **Exhibit 3**.

N.  The Debtor's Senior Management

55. Pursuant to L.B.R. 1007-2(a)(12), the Debtor's senior management consists of:

Paulette Cole, Manager: As the co-founder and Creative Director of abc carpet & home and abc kitchen(s), I have been an innovator in retail, hospitality, and socially responsible business. I have been recognized for abc's socially conscious business model in publications including Time, Newsweek, The New York Times, Inc Magazine, Architectural Digest, Elle Decor, and Town & Country. I have been honored by the New York Open Center, Aid to Artisan, amfAR Gift for Life, Trickle Up, The Fashion Institute of Technology, and the NY School of Interior Design.

II. **Additional Information Required by L.B.R. 1007-2(b)**

56. In accordance with L.B.R. 1007-2(b), the Debtor intends to continue the operation of its business and the management of its property as a debtor and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

10

57. In accordance with L.B.R. 1007-2(b)(1), the estimated amount of the weekly payroll to employees (exclusive of officers, directors, stockholders, and partners) for the thirty (30) day period following the Petition Date is approximately $0.00. As stated above, the Debtor has no employees and I do not take a salary in my capacity as the Debtor's manager or otherwise.

58. In accordance with L.B.R. 1007-2(b)(2)(A), the amounts paid and proposed to be paid for the thirty (30) day period following the Petition Date for services rendered by the Debtor's officers is approximately $0.00.

59. The Debtor does not expect to retain a financial or business consultant, therefore L.B.R. 1007-2(b)(2)(C) is not applicable.

60. In accordance with L.B.R. 1007-2(b)(3), a schedule of estimated receipts and disbursements is attached hereto as **Exhibit 4**.

### III.    Conclusion

61. The Debtor believes that the protections afforded by chapter 11 will enable it to maximize the value of the Debtor, for its creditors and its estate.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
August 4, 2021

/s/ *Paulette Cole*
Paulette Cole, Manager